[Cite as *Swiger v. Swiger*, 2026-Ohio-2744.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| MICHAEL T. SWIGER | : | |
| | : | C.A. No. 2026-CA-5 |
| Appellees | : | |
| | : | Trial Court Case No. 21DIV00228 |
| v. | : | |
| | : | (Appeal from Common Pleas Court- |
| CARRIE A. SWIGER (NKA OLIVER) | : | Domestic Relations) |
| AND MITCHELL SWIGER, ET AL. | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 17, 2026, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with the opinion.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately send a copy of the court's ruling to each party and note that action on the docket. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

ROBERT G. HANSEMAN, JUDGE

TUCKER, J., and EPLEY, J., concur.

OPINION

CYNTHIA WESTWOOD, Attorney for Appellant
MICHAEL T. SWIGER, Appellee, Pro Se

HANSEMAN, J.

{¶ 1} Defendant-appellant, Carrie A. Oliver (f.k.a. Swiger), appeals from the post-divorce decree order issued by the Darke County Common Pleas Court on January 21, 2026, that continued an order that modified parental rights and responsibilities in favor of plaintiff-appellee, Michael T. Swiger, and against Oliver in relation to their child A.S. For the reasons that follow, the judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

**Facts and Course of Proceedings**

{¶ 2} Oliver and Swiger were married on July 1, 2006, and had two children during the marriage, A.S., born in 2009, and L.S., born in 2014. On July 21, 2022, Oliver and Swiger entered into an agreement regarding their divorce, and the Darke County Common Pleas Court adopted the agreement by a final decree filed July 21, 2022. Regarding the children, Oliver was named the residential parent and legal custodian of A.S. and L.S., and Swiger was granted a standard order for parenting time. Only A.S. is the subject of this appeal.

{¶ 3} Later, Swiger filed a motion to reallocate parental rights and responsibilities. By agreement approved by the trial court on December 21, 2023, Oliver and Swiger were each designated residential parent and legal custodian of A.S. under a shared parenting order.

{¶ 4} Less than three months later, Swiger filed a motion to terminate the shared parenting order and to modify parenting time. The court appointed a guardian ad litem ("GAL") and held a hearing. On September 30, 2024, by agreement of Oliver and Swiger,

2

the court designated third-party defendants, A.S.'s paternal aunt and uncle, as the child's residential parents and legal custodians. Oliver and Swiger were each granted parenting time.

{¶ 5} About one year later, during the fall of 2025, Oliver and Swiger individually filed motions requesting the reallocation of parental rights and responsibilities. Each party requested to be designated residential parent and legal custodian of A.S. Neither party's motion included a request to vacate the September 30, 2024 order. The court appointed a GAL and set the case for an evidentiary hearing on January 22 and 26, 2026.

{¶ 6} On November 19, 2025, prior to the hearing, the trial court sua sponte issued a temporary order designating Swiger as A.S.'s residential parent and legal custodian. In its order, the court stated that, upon consideration of the GAL report, the order was necessary. The court also vacated the September 30, 2024 agreed order that designated A.S.'s aunt and uncle as the child's residential parents and legal custodians.

{¶ 7} Oliver filed a notice of appeal challenging the trial court's sua sponte temporary order modifying A.S.'s custody. However, the appeal was dismissed on January 6, 2026, for lack of a final appealable order. *See Swiger v. Swiger*, No. 2025-CA-22 (2d Dist. Jan. 6, 2025). In large part, we determined that because there was a hearing scheduled in the trial court and the caption of the order stated "temporary," we did not have a final appealable order, but instead we had an interlocutory order. *Id*. After Oliver's appeal was dismissed, on January 21, 2026, Oliver and Swiger filed a mutual voluntary dismissal of their motions pending before the trial court.

{¶ 8} The following day, without any proceedings pending in the case before the trial court, the court sua sponte ordered that "interim orders regarding parenting issues pertaining

to the children remain in effect." Oliver timely appealed and now raises two assignments of error, summarized below.

1. The trial court erred as a matter of law when it vacated the order granting legal custody to A.S.'s aunt and uncle and granted it to Swiger without a hearing.

2. The trial court erred as a matter of law when it continued interim orders after determining that the case was concluded and issued a final appealable order.

Swiger did not file an appellee's brief. Because Oliver's first assignment of error resolves the appeal, we address only that assignment of error.

**Discussion**

{¶ 9} We recognize that decisions regarding parental rights "are some of the most difficult and agonizing decisions a trial judge must make." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). However, the constitutions of the United States and the state of Ohio afford parents a fundamental right to the custody of their children. *In re Brayden James*, 2007-Ohio-2335, ¶ 16, citing *In re Hockstok*, 2002-Ohio-7208, ¶ 16, citing *In re Murray*, 52 Ohio St.3d 155, 157 (1990), and *Santosky v. Kramer*, 455 U.S. 745, 753 (1982).

{¶ 10} Generally, trial court orders regarding the allocation of parental rights and responsibilities are reviewed under an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989), citing *Miller v. Miller*, 37 Ohio St.3d 71 (1988); *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). As stated by the Supreme Court of Ohio in *Flickinger*, "the reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Flickinger* at 418. "'The underlying rationale of giving deference to the findings of the

4

trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 11} "While a trial court's discretion in a custody modification proceeding is broad, it is not absolute." *Miller* at 74. A trial court may not make an error of law. *Flickinger* at 419 ("'A finding of an error in law is a legitimate ground for reversal . . . .'"), quoting *Seasons Coal* at 81. "No court—not a trial court, not an appellate court, nor even a supreme court— has the authority, within its discretion, to commit an error of law." *State v. Boles*, 2010-Ohio-278, ¶ 26 (2d Dist.). With this in mind, we address the errors made by the trial court.

{¶ 12} The trial court was not authorized to issue the interim order that modified parental rights and responsibilities, because the parties were in a post-decree situation. Unlike proceedings that lead up to a final decree of divorce or dissolution, which do authorize courts to issue temporary or interim orders, Civ.R. 75 does not authorize post-decree interim orders on motions to modify parental rights. *See* Civ.R. 75(N)(1) ("[w]hen requested in the complaint, answer, or counterclaim, or by motion served with the pleading, upon satisfactory proof by affidavit duly filed with the clerk of the court, the court or magistrate, without oral hearing and for good cause shown, may grant a temporary order regarding . . . [the] allocation of parental rights and responsibilities for the care of children of the marriage, whether natural or adopted, during the pendency of the action for divorce, annulment, or legal separation."). Although R.C. 3109.043 also allows for temporary orders, the statutory language tracks the language of Civ.R. 75(N) and does not apply to post-decree modifications of parental rights. *Compare* R.C. 3109.043 *with* Civ.R. 75(N). Neither Civ.R. 75(N), R.C. 3109.043, nor any other legal authority authorized the trial court's sua

5

sponte temporary order reallocating parental rights in favor of Swiger pending the hearing that the court had scheduled.

{¶ 13} Additionally, in the same order, the trial court sua sponte vacated its prior September 30, 2024 order. Civ.R. 60(B) does not authorize a trial court to sua sponte vacate its previous final orders without a motion of a party. *See* Civ.R. 60(B) ("on motion and upon such terms as are just"). "Courts have consistently held that a court is without authority to sua sponte vacate a judgment under Civ.R. 60(B)." *Coffman v. Coffman*, 1995 WL 386926 (2d Dist. June 28, 1995) ("because there was no motion before the court as required by Civ.R. 60(B), the trial court's *sua sponte* action was erroneous."); *Osborne v. Kroger Co.*, 2020-Ohio-6757 (10th Dist.) (citing cases). Neither Oliver nor Swiger requested the court to vacate its prior order. Instead, they each sought a modification of it. The trial court's sua sponte order vacating the September 30, 2024 order is not authorized by law and is erroneous.

{¶ 14} Because the motions pending before the trial court were dueling post-decree motions to reallocate parental rights, the trial court was required to follow R.C. 3109.04. This statute provides the standards and procedure governing a court's modification of the allocation of parental rights and responsibilities. *See* R.C. 3109.04; *Bruns v. Green*, 2020-Ohio-4787, ¶ 8 ("R.C. 3109.04 establishes the process for allocating parental rights and responsibilities between the parents of a minor child."). R.C. 3109.04(E)(1)(a) provides that a court

> ***shall not modify*** a prior decree allocating parental rights and responsibilities for the care of children ***unless it finds***, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that ***a change has occurred in the***

6

***circumstances*** of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the ***best interest of the child***.

(Emphasis added.)

**{¶ 15}** Both Oliver and Swiger had motions pending before the trial court to be designated residential parent and legal custodian of A.S. "A modification of the designation of residential parent and legal custodian of a child requires a determination that a 'change in circumstances' has occurred, as well as a finding that the modification is in the best interest of the child." *Fisher v. Hasenjager*, 2007-Ohio-5589, syllabus. In *Fisher*, the Supreme Court of Ohio construed and applied R.C. 3109.04(E)(1)(a), stating "[a]n allocation of parental rights and responsibilities is a designation of the residential parent and legal custodian." *Id*. at ¶ 26. "Therefore, R.C. 3109.04(E)(1)(a) controls when a court modifies an order designating the residential parent and legal custodian." *Id*.

**{¶ 16}** The trial court's interim order designating Swiger as residential parent and legal custodian of A.S. modified the allocation of parental rights. It is troubling that the trial court issued its order without a finding that a change of circumstances had occurred, as required by R.C. 3109.04(E)(1)(a). *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997) ("Clearly, there must be a *change* of circumstances to warrant a change of custody, and the change must be a change of substance, not a slight or inconsequential change."); *In re Brayden James*, 2007-Ohio-2335, paragraph one of the syllabus ("R.C. 3109.04(E)(1)(a) precludes a trial court from modifying a prior decree allocating parental rights and responsibilities unless it finds . . . that a change has occurred in circumstances of the child, the child's residential parent, . . . [and] that the modification of the prior custody decree is . . . [in] the best interest of the child.").

7

{¶ 17} Equally troubling is that the trial court issued its order without holding a hearing or taking evidence. The trial court's order was entered sua sponte and based on its review of a GAL report. The record does not contain evidence that Oliver and Swiger stipulated to the report or waived their right to a hearing.

{¶ 18} Trial courts are required to hold evidentiary hearings and allow parties to cross-examine all witnesses or evidence that a trial court may rely on to make its determinations on any changes in circumstances or the best interests of a child. *Beaver v. Beaver*, 2001-Ohio 2399 (4th Dist.); *Webb v. Lane*, 2000 WL 290383, *1 (4th Dist. March 15, 2000) ("due process requires that the trial court permit each party to cross-examine a court-appointed investigator whose report the trial court considers as evidence"); *Green v. Green*, 2004-Ohio-185 (3d Dist.) (denial of father's motion for a reallocation of parental rights and responsibilities without conducting an evidentiary hearing constitutes an abuse of discretion and reversable error); *Price v. Nixon*, 2011-Ohio-2430 (2d Dist.) (applying principles of fundamental fairness and procedural due process and reversing a trial court's order of custody when a parent did not have an opportunity to be heard); R.C. 3109.01(E)(1)(a) (the change in circumstances must involve "facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree"). In *Nixon*, we held that the basic principles of procedural due process requires a trial court to provide notice and an opportunity to be heard before making a custody determination. *Id*. The failure to do so is an error of law and reversable. *Id*.

{¶ 19} Additionally, without holding a hearing or taking evidence, the trial court did not have facts before it to apply to the statutory best interest of the child factors that it was mandated to consider under R.C. 3109.04(F). The statute provides that "[i]n determining the best interest of a child under this section . . . on a modification of a decree allocating those

8

[parental] rights and responsibilities, the court shall consider all relevant factors, including, but not limited to": (a) the parent's wishes; (b) the child's wishes and concerns after an interview in chambers, if applicable; (c) the child's interaction and interrelationship with parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's adjustment to home, school, and community; (e) the mental and physical health of all involved; (f) the parent more likely to honor and facilitate parenting time rights; (g) any failure to make child support payments, including arrearages; (h) whether either parent or any member of the household of either parent previously has been convicted of certain offenses; (i) whether the residential parent continuously and willfully denied court-ordered parenting time; and (j) whether either parent has established a residence or is planning to establish a residence outside of this state. R.C. 3109.04(F)(1)(a) through (j). Therefore, without a factual basis, it was error for the trial court to determine that the best interests of A.S. were served by designating Swiger as residential parent and legal custodian.

{¶ 20} Given the errors that occurred in the trial court as described in this decision, Oliver's first assignment of error is sustained.

{¶ 21} Oliver's second assignment of error is overruled as moot.

**Conclusion**

{¶ 22} The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

TUCKER, J., and EPLEY, J., concur.